UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRADLEY T. PETERSON,

        Plaintiff,

v.

JEFFREY WICKHAM, et al.,

        Defendants.
_____/

Case No. 20-10002
District Judge Linda V. Parker
Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

On January 2, 2020, Plaintiff Bradley T. Peterson filed the present action under 42 U.S.C. § 1983, alleging Fourth and Fourteenth Amendment violations, as well as state law claims of false arrest and false imprisonment, during the course of his August, 2019 arrest by members of the Belleville Police Department. Currently before the Court is a motion for summary judgment filed by Defendants Wickham, Johns, and the City of Belleville [ECF No. 17], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED and that these Defendants be DISMISSED WITH PREJUDICE.

**I.   FACTS**

Plaintiff makes the following allegations in his Complaint. On August 24, 2019, Plaintiff was riding his bike through a City of Belleville park when Defendants Jeffrey

-1-

Wickham and Defendant Nick Johns, City of Belleville police officers, approached him. *Complaint,* ECF No. 1, PageID.2, ¶ 1. Defendant Wickham said to Plaintiff, "Mr. Terrorist, there's [no] drinking in the park." Plaintiff notes that at the time, he was holding an empty beer bottle inside of a plastic bag. Plaintiff alleges that because of a prior arrest in 2017, he answered respectfully that the beer bottle was empty and that he had not been drinking. He then "respectfully asked" Defendants "if they wore any body video." He alleges that both officers became angry and began assaulting him by "twisting and grabbing" his wrist and arms; throwing him to pavement; smashing his face and head; and then attempted to throw the bike into the weeds. Plaintiff states that upon arrest, he "had to demand" that his bike was "secure and safe." He states that once in jail, he accused the City of Belleville Police Department of racism, bias, prejudice, false arrest, slander, and false imprisonment. He alleges that as a result of the arrest, he experienced "heart pain," stroke, numbness, head injuries, and emotional and mental stress. Plaintiff, a "Native Indian-African," states that he lives "in fear" of "Jim Crow laws" and "self-imposed immunity laws" that prevent members of racial minorities from obtaining redress. *Id.,* PageID.2-4.

Plaintiff raises the following claims: (1) Section 1983 claim of Fourth Amendment violation, based on Defendants' excessive use of force; (2) Section 1983 claim of 14th Amendment Equal Protection violation; (3) state law claim of false arrest; and (4) state law claim of false imprisonment. ECF No. 1, PageID.20.

Appended to Defendants' motion as Exhibit B is the Affidavit of Jeffrey Wickham.

ECF No. 17-3, PageID.193-197. Defendant Wickham, a Belleville Police Officer, attests as follows. He and his partner, Res. Lt. Nick Johns, were on road patrol on August 24, 2019. As they were engaged in a traffic stop near Horizon Park, Plaintiff rode past on a bicycle and yelled to let the vehicle they had stopped go. *Id*. ¶ 3. Wickham saw Plaintiff ride his bicycle under a pavilion in the park, and Plaintiff appeared to be drinking something out of a paper bag. *Id*. ¶ 5. He states that riding a bicycle in the pavilion area and possessing or drinking alcohol in the park are "against Belleville City Ordinance." *Id*. ¶ 6. In Wickham's experience, individuals who are attempting to conceal alcoholic beverages will place it in a paper bag. *Id*. ¶ 7.

As Wickham and Johns approached the Plaintiff, Wickham smelled the strong odor of alcohol on him, and saw that there was a brown bottle with a red cap band inside the paper bag that Plaintiff was holding. Wickham recognized this as being the top of a 40-ounce Budweiser beer bottle. *Id*., ¶¶ 10-11. When Wickham advised Plaintiff that he was not allowed to drink alcohol inside the park, the Plaintiff became "aggressive and combative, calling us racist and telling us that we had nothing better to do than mess with him because we thought we saw 'a black man drinking a fucking beer in fucking America.' " *Id*. ¶ 13. Wickham observed that Plaintiff stood about six feet tall, weighed about 200 pounds, and was holding a large glass bottle. Out of a concern for safety, Wickham asked Plaintiff to give him the bottle, but Plaintiff refused. When Wickham attempted to take the bottle, Plaintiff tightened his grip, and said the officer was "not getting it." Several times, Wickham asked

Plaintiff to put the bottle down, but Plaintiff refused. *Id*. ¶¶ 15-18.

In an attempt to relieve Plaintiff of the beer bottle, Lt. Johns grabbed Plaintiff's arms, as Wickham continued to try to extricate the bottle. During this time, Plaintiff remained with the bicycle between his legs. Johns gave Plaintiff several commands to put his hands behind his back, but Plaintiff refused to do so. *Id*., ¶¶ 19-21.

Plaintiff was then advised that he was under arrest for possessing alcohol inside the park, and for resisting and obstructing. Eventually, Wickham got the bottle away from the Plaintiff. Wickham and Johns then removed Plaintiff from the bicycle and lowered him to the ground. During this time, Plaintiff continued to resist Wickham's efforts to bring his arms behind his back, attempting to pull his arms away in a forward motion. Plaintiff ignored commands to put his hands behind his back. Eventually, the officers were able to place handcuffs on the Plaintiff; they assisted him to his feet and placed him on a picnic bench. *Id*. ¶¶ 22-28. Wickham confirmed that the bottle was a 40-ounce Budweiser bottle that contained beer. *Id*. ¶ 29.

The Plaintiff was transported to the Van Buren Township Police Department for booking. At the station, Plaintiff was uncooperative, screaming, pounding on the lockup door, and covering up the cell cameras. Therefore, Plaintiff remained at the lockup until later that evening, when the booking process was completed. Plaintiff was given a misdemeanor citation for alcohol possession in the part and resisting and obstructing police officers. *Id*. ¶¶ 35-38.

Wickham states that he did not see any sign of injury on the Plaintiff, and that Plaintiff never complained to him of any pain during his contact with him on the day of his arrest. *Id*. ¶¶ 39-41.

Defendants' Exhibit C is the affidavit of Nick Johns, a reserve Belleville Police Officer. ECF No. 17-4, PageID.199-203. Officer Johns attests as follows. At approximately 1:30 p.m on August 24, 2019, as he was completing a traffic stop, Plaintiff rode by him on a bicycle and yelled something. After the stop, he saw that Plaintiff was under the park's pavilion, on a bicycle, drinking what Johns suspected was alcohol out of a paper bag. On closer observation, Johns saw the top of the bottle, and it resembled the top of a 40-ounce Budweiser bottle. *Id*. ¶¶ 4-8. Johns heard his partner, Wickham, tell Plaintiff that he was not allowed to drink alcohol inside the park. Plaintiff became angry and aggressive, "yelling and screaming, calling us racist and using several expletives." *Id*. ¶¶ 12-13. After Plaintiff refused to comply with several requests to put the bottle down, and refused to let Wickham take the bottle from him, Wickham advised Plaintiff that he was under arrest, and told him to put his hands behind his back. *Id*. ¶¶ 14-16. Plaintiff refused to do so, despite several commands. Johns and Wickham were eventually able to remove the beer bottle from Plaintiff's hands, and they lowered him to the ground. While on the ground, Plaintiff continued to resist John's efforts to bring his arm behind his back, but eventually the officers were able to handcuff the Plaintiff. *Id*. ¶¶ 17-21.

During the ride to the police station, Plaintiff continued to yell at the officers. Plaintiff

could not be immediately booked because he was so combative, so he was placed in a holding cell to allow him to calm down. *Id*. ¶¶ 24-25. Plaintiff was issued a misdemeanor citation and released around 9:30 p.m. *Id*. ¶¶ 26-27.

Johns states that Plaintiff did not appeared to be injured during his contact with him, and did not hear Plaintiff complain of any pain. *Id*. ¶¶ 28-29. Johns has not had any contact with the Plaintiff since August 24, 2019. *Id*. ¶ 30.

Defendants' Exhibit E is the Plaintiff's booking sheet from the Van Buren Township Police Department on August 24, 2019. ECF No. 17-6, PageID.213. Under the "medical" section, it indicates no head injury, and does not note any injuries. It is signed by Plaintiff.

Defendants' Exhibit K is the affidavit of Karolyn Miller, an attorney who handles misdemeanor prosecutions for the City of Belleville. ECF No. 17-12, PageID.232-234. Ms. Miller states that Plaintiff appeared in court several times on the misdemeanor charges arising out of his August 24, 2019 arrest, and was consistently hostile and disruptive. He refused to avail himself of a court-appointed attorney. *Id*. ¶¶ 4-5. He rejected a proposed plea bargain, and the case was set for trial. Although Ms. Miller believed there was sufficient evidence to secure a conviction, she opted to dismiss the charges during a December 17, 2019 pretrial hearing. *Id*. ¶ 8. She states that she "simply wished to avoid the disruption to the court and the expense to the City." *Id*. ¶ 9.

In his response to the summary judgment motion, Plaintiff alleges that a videotape that showed him "scream[ing] of racism, discrimination in the Van Buren Police Station

booking room" was unlawfully destroyed. ECF No. 22, PageID.322. He states that during his arrest, his face was smashed on the cement ground. *Id.*, PageID.325. Although his response contains numerous accusations of racism on the part of the Defendant officers, as well as generalized claims of systemic racism within the City of Belleville and in the United States, it does not contain any affidavits or other material otherwise contradicting the version of events set forth in the Defendants' affidavits.

Defendant Wickham submitted a second affidavit with Defendants' reply brief. ECF No. 19-1, PageID.308-309. Wickham states that he "did not destroy any video pertaining in any way to Plaintiff Bradly Peterson or the incident he complains of in the lawsuit he has filed against me." *Id.* ¶ 2. He also states that although he cannot recall whether his in-car video system was activated at the time of Plaintiff's arrest, even if it had been the Plaintiff's arrest would not have been recorded "because my squad car was not pointed in the direction of where I encountered Plaintiff." *Id.* ¶ 5. Finally, he states that under the City of Belleville's retention policy, in-car video is retained for 60 days and jail video is retained for 30 days, "so even if video pertaining to Plaintiff did exist, Plaintiff did not request that the video be preserved until after the retention period expired." *Id* ¶ 7.[1]

Defendant Johns submitted a second affidavit as well. ECF No. 19-2, PageID.311-312. He states that he did not destroy any video relating to the Plaintiff, and that even if

---

[1] Plaintiff's complaint contains a request for video evidence. ECF No. 1, PageID.11. The complaint was filed on January 2, 2020, well after the expiration of the retention period.

Wickham's in-car video had been recording on the date of the incident, "it would not have captured our contact with Plaintiff inside the park because his care was not facing in that direction." *Id*. ¶¶ 2-3.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

#### A. Excessive Force

In scrutinizing a claim of excessive force, the constitutional standard is the Fourth Amendment's requirement of reasonableness. *Graham v. Connor,* 490 U.S. 386 (1989). That standard is objective, and is applied without reference to the officer's subjective motivations. *Id*. In *Gaddis v. Redford Township*, 364 F.3d 763, 772 (6th Cir. 2004), the Court set forth the following factors to be considered:

> "Courts must apply an objective standard, looking to 'the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect pose[d] an immediate threat to the safety of the officers or others, and [3] whether he was actively resisting arrest or attempting to evade arrest by flight.' *Russo v. City of Cincinnati*, 953 F.2d 1036, 1044 (6th Cir. 1992) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865) (brackets added)."

This is a non-exhaustive list, and the "'proper application' of the reasonableness inquiry 'requires careful attention to the facts and circumstances of each particular case....'" *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005), quoting *Graham*, 490 U.S. at 396. The standard "contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). A court must recognize that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Graham* at 397. *See also Earnest v. Genesee County*, __Fed.App'x___, 2021 WL 289313, *2 (6th Cir. Jan. 28, 2021) ("'[T]he amount of force must be objectively reasonable under the totality of the circumstances' from the perspective of a reasonable officer at the time of the alleged excessive force.") (Quoting *Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020).

Admittedly here, the ordinance violation with which Plaintiff was charged–possessing or drinking alcohol in a public park–is on the low end of the severity spectrum. The charge of resisting and obstructing a police officer is of greater severity, since it carries the risk of physical harm to both the officers and the suspect.

Then there is the question of whether the Plaintiff posed an immediate threat to the officers or others–or more precisely, whether the Defendant officers reasonably perceived that there might be a threat. Here, the officers were faced with a physically large man who

was defiantly aggressive and combative. The Plaintiff refused several requests to put down a large bottle that could be used as a weapon, and resisted Defendant Wickham when he tried to take the bottle. Under the totality of the circumstances, it was not unreasonable for the Defendants to conclude that the Plaintiff might elevate his aggression to the level of a physical assault on them.

But it is the Plaintiff's active resistance to arrest that looms particularly large in assessing whether the Defendants' actions were reasonable. The Plaintiff refused requests to put his hands behind him, and aggressively resisted the Defendants' attempts to place handcuffs on him. When he was taken to the ground, the Plaintiff continued to resist, attempting to pull his arms away in a forward motion. The Sixth Circuit has held that even the use of taser, batons, and pepper spray to subdue "a suspect actively resisting arrest and refusing to be handcuffed" is reasonable. *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 509 (6th Cir. 2012). *See also Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015) (tasering and knee strikes are justified where a person resists arrest by refusing to be handcuffed); *Earnest v. Genesee County*, at \*2 (same). Here, Wickham's and Johns' uncontested affidavits show that the level of force used during Plaintiff's arrest did not even rise to the level deemed reasonable in *Hagans* and *Rudlaff*. In addition, Plaintiff has offered no evidence that he received any significant injuries during the arrest. Instead, the Defendants' affidavits indicate that the officers did not observe any injuries, and the booking sheet [Defendants' Exhibit E], which the Plaintiff signed, does not note any injuries.

The Plaintiff has not provided any evidence on which a jury could reasonably find in his favor, and the Defendants' evidence shows that there is no triable issue of fact sufficient to defeat their motion for summary judgment.

The Defendants seek dismissal on the basis of qualified immunity. Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194 (2001). Under Saucier, the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan*, 555 U.S. 223, 129 (2009), the Supreme Court held that the two-step sequential analysis set forth in Saucier is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

As discussed above, there was no constitutional violation in this case. Hence, the Defendants are entitled to qualified immunity. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002)("Plaintiff's case is barred by the affirmative defense of qualified immunity at the inception inasmuch as Plaintiff has failed to show a violation of a constitutionally protected right")(citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

### B. Equal Protection

Notwithstanding his broad and generalized statements about the systemic racism that

permeates society, Plaintiff's Equal Protection claim in this case rests on a theory of selective enforcement. Therefore, he "must establish that the challenged police action 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985) ). In *King v. City of Eastpointe*, 86 Fed.App'x 790, 802 (6th Cir. 2003), the Court described how those requirement could be proved:

> A plaintiff can prove discriminatory effect by showing that the police treated similarly situated individuals of another race differently through statistical evidence or identifying a person of another race who police treated differently. *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Chavez v. Ill. State Police*, 251 F.3d 612, 638 (7th Cir.2001). A plaintiff can show discriminatory purpose through evidence that an official chose to prosecute or engage in some other action "at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610.

Plaintiff has not identified any individuals who are not members of a protected class who were treated any differently under similar facts. Nor has he shown any evidence that Defendants had the intent to discriminate or that they had a discriminatory purpose in arresting him. Instead, as discussed below, they arrested him because they had probable cause to do so. He bases his Equal Protection claim on nothing more than speculation. That is not enough.

### C. False Arrest and False Imprisonment

Under Michigan law, an essential element of a claim of false arrest or false imprisonment is the absence of probable cause. *See Peterson Novelties, Inc. v. City of*

*Berkley*, 259 Mich. App. 1, 18, 672 N.W.2d 351 (2003)("To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause"); *see also Tope v. Howe*, 179 Mich. App. 91, 105, 445 N.W.2d 452 (1989)(probable cause is an element of a false arrest claim); *Matthews v. Blue Cross Blue Shield of Michigan*, 456 Mich. 365, 378, 572 N.W.2d 603 (1998)(probable cause is an element of a malicious prosecution claim).[2]

To describe or define the concept of probable cause to arrest, I can do no better than Judge Berg did in *United States v. Gordon*, 346 F. Supp. 3d 999, 1013–14 (E.D. Mich. 2018):

> "Probable cause necessary to justify an arrest is defined as 'whether at that moment the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense.' *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ). The Court must examine the existence of probable cause 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.' *Id*., citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir.2001), cert. denied, 537 U.S. 819, 123 S.Ct. 95, 154 L.Ed.2d 26 (2002) (internal citations omitted); see also *D.C. v. Wesby*, —— U.S. ——, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018) (To determine whether an officer had probable cause for an arrest, 'we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'). This examination 'deals with probabilities and depends on the totality of the circumstances,' and it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules.' *Wesby*, 138 S.Ct. at 586 (citing *Maryland*

---

[2] To the extent that Plaintiff is bringing a claim of false arrest under § 1983, it would be based on the Fourth Amendment, which also depends on a finding that there was no probable cause for the arrest. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

*v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003); and *Gates*, 462 U.S. at 232, 103 S.Ct. 2317. The bar for probable cause is not especially high—it requires only a 'probability or substantial chance of criminal activity, not an actual showing of such activity.' *Gates*, 462 U.S. at 243–244, n. 13, 103 S.Ct. 2317; *Kaley v. United States*, 571 U.S. 320, 338, 134 S.Ct. 1090, 188 L.Ed.2d 46 (2014)."

In this case, Defendants Wickham and Johns' direct observations provided probable cause to arrest the Plaintiff for possession of alcohol on the park grounds. Their attention was drawn to the Plaintiff by his having called out to them while they were effecting a traffic stop. They then observed him with his bicycle on the park pavilion, itself an ordinance violation. They saw him drinking out of a paper bag, which in their experience suggested that the bag contained an alcoholic beverage. As they approached the Plaintiff, Wickham noticed the strong smell of alcohol, and the officers then observed the top of the bottle that was in the bag, seeing that it resembled the distinctive top of a 40-ounce Budweiser beer bottle. From the standpoint of an objectively reasonable police officer, these facts clearly showed a "probability or substantial chance of criminal activity." And as to Plaintiff's arrest for resisting and obstructing a police officer, the Plaintiff's refusal to follow lawful commands, refusal to put down the bottle, and his physical resistance to a lawful arrest speak for themselves.

Because there was probable cause to support Plaintiff's arrest both for possession of alcohol in the park and resisting and obstructing, his claims of false arrest and false imprisonment fail.

### D. Claims Against the City of Belleville

In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) the Supreme Court held that under § 1983, municipal liability is not unlimited, and that a municipality could not be liable on a theory of respondeat superior: "A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.*, 436 U.S. at 691 (Emphasis in original). Nevertheless, the *Monell* Court found that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. Id., 436 U.S. at 690–692.

However, before a court even reaches the question of municipal liability, it must first be shown that there is an underlying constitutional violation. "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir.2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). Because Plaintiff has not presented any evidence that the individual Police Officer Defendants violated his constitutional rights, the City of Belleville has no municipal liability, and must be dismissed.

### IV. CONCLUSION

I recommend that the Defendants' Motion for Summary Judgment [ECF No. 17] be GRANTED, and that Defendants Wickham, Johns, and the City of Belleville be DISMISSED

WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. Steven Whalen
United States Magistrate Judge

Dated: January 29, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 29, 2021 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager
